**SIGNED THIS: December 7, 2012**

_____
**Thomas L. Perkins**
**United States Chief Bankruptcy Judge**
_____

## UNITED STATES BANKRUPTCY COURT
## CENTRAL DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | |
| KIMBRELL REALTY/JETH COURT, LLC, | ) | Case No.  12-81454 |
| | ) | |
| Debtor. | ) | |
| ———————————————————— | ) | |
| | ) | |
| KIMBRELL REALTY/JETH COURT, LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Adv. No.  12-8047 |
| | ) | |
| FEDERAL NATIONAL MORTGAGE | ) | |
| ASSOCIATION, | ) | |
| | ) | |
| Defendant. | ) | |

### O P I N I O N

This matter is before the Court on the motion for summary judgment filed by the

Plaintiff, Kimbrell Realty/Jeth Court, LLC (DEBTOR), against the Defendant, Federal

National Mortgage Association (FANNIE MAE).  The Complaint seeks a declaratory

judgment that a prepayment premium, default interest and certain additional charges

sought to be imposed by FANNIE MAE are impermissible. The motion addresses only the

prepayment premium and default interest. This is a core proceeding, both statutorily and

constitutionally, under 28 U.S.C. § 157(b)(2)(B) and (K).

### FACTUAL AND PROCEDURAL BACKGROUND

1. DEBTOR owns and operates a forty-five unit rental complex located in Peoria, Illinois, commonly known as Jeth Court.

2. The DEBTOR filed a voluntary petition for protection under chapter 11 on June 18, 2012, and is operating its apartment rental business as debtor in possession.

3. As of August 1, 2008, the DEBTOR obtained a loan from Royal Bank of Canada in the principal amount of $2,264,000.00 payable with interest at 6.55% in monthly installments of $14,385.55 over a term of 84 months, with the remaining balance due August 1, 2015, which the Note defines as the "Maturity Date."

4. The loan is evidenced by an instrument entitled Multifamily Note, identified as a Fannie Mae Multifamily Recourse Fixed Rate Note – Multistate, Form 4100-R, 10-05.

5. Neither "prepayment" nor "prepayment premium" is defined in the definitions paragraph of the Note.

6. The term "prepayment" is used in paragraph 10 of the Note to include both voluntary extra payments made when the borrower is not in default, and involuntary payments collected from the borrower after a default and acceleration, including the application of collateral.

7. The Note provides in paragraph 10 that the "prepayment premium" is payable whether the prepayment is voluntary or involuntary.

8. Paragraph 10(e) of the Note provides that borrower recognizes that any prepayment, voluntary or involuntary, will cause lender a loss, the amount of which is difficult to ascertain, and that borrower agrees that the prepayment premium formula represents a reasonable estimate of the damages lender will incur because of a prepayment.

9. Attached to the Note is a schedule entitled "Schedule A, Prepayment Premium," which sets out a formula for calculating the prepayment

premium.

10. The Note is secured by a Multifamily Mortgage, Assignment of Rents and Security Agreement, granting a mortgage on the real estate owned by the DEBTOR.

11. FANNIE MAE is the assignee of Royal Bank of Canada and is entitled to enforce the Note and Mortgage.

12. Prior to bankruptcy, the DEBTOR defaulted on its obligations under the Note and Mortgage and FANNIE MAE exercised its right to accelerate the entire unpaid principal balance under the Note.

13. On February 7, 2012, FANNIE MAE filed an action to foreclose the mortgage in the Peoria County Circuit Court.

14. In addition to principal of $2,185,859.78 and scheduled and accrued interest of $48,917.72, the foreclosure complaint alleges, among other charges, default interest in the amount of $22,344.34 and a prepayment/yield maintenance amount due of $400,962.55.

15. The proof of claim filed by FANNIE MAE includes the following amounts due as of September 30, 2012:

|  |  |
|---|---|
| Principal Balance | $2,185,859.78 |
| Yield Maintenance | 400,962.55 |
| Interest Due | 145,560.05 |
| Default Interest Due | 81,362.56 |

The "Interest Due" is calculated based upon 366 days at 6.55%. The "Default Interest Due" is based upon 335 days at 4.00%.

16. The Note separately defines "Default Rate" to mean "a rate equal to the lesser of 4 percentage points above the Interest Rate or the maximum interest rate which may be collected from Borrower under applicable law."

17. Paragraph 8 of the Note provides, in part, that so long as any payment remains past due for 30 days or more, interest shall accrue on the unpaid principal balance from the due date of any such payment at the Default Rate.

18. The total amount due according to the proof of claim is $2,898,588.71.

19. The DEBTOR concedes that FANNIE MAE is oversecured.

20. The DEBTOR is attempting to obtain a take-out loan to refinance the debt and pay off FANNIE MAE in full. The purpose of this proceeding is to

obtain a determination of the amount of FANNIE MAE'S allowed secured claim so that refinancing may proceed.

## SUMMARY OF ARGUMENTS

The adversary complaint is filed in six counts. Counts I and II deal with the prepayment premium and III and IV deal with default interest. Counts V and VI deal with certain other additional charges included in the payoff statement. The motion does not address Counts V and VI and is thus properly construed as a motion for partial summary judgment.

Counts I and III are brought under section 502(b)(1) of the Bankruptcy Code, providing for disallowance of a claim to the extent that "such claim is unenforceable against the debtor and property of the debtor, under any agreement or applicable law for a reason other than because such claim is contingent or unmatured."

Counts II and IV are brought under section 506(b) of the Bankruptcy Code, providing that an oversecured creditor shall be allowed "interest on such claim, and any reasonable fees, costs, or charges provided for under the agreement" under which its claim arose.

The DEBTOR contends that because the Note has been accelerated the prepayment premium is not enforceable as a matter of Illinois law. Alternatively, the DEBTOR contends that if a prepayment premium is allowed, the additional interest due on account of default is not enforceable under Illinois law and is not a reasonable charge. FANNIE MAE argues that the prepayment premium and default interest are provided for by the Note and are not prohibited by applicable law.

## SUMMARY JUDGMENT STANDARDS

Under Federal Rule of Civil Procedure 56(c), made applicable to adversary

proceedings by Federal Rule of Bankruptcy Procedure 7056, summary judgment is proper if the pleadings, depositions, answers to interrogatories, and admissions on file, together with any affidavits, show that there is no genuine issue of material fact, and that the moving party is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Where the material facts are not in dispute, the sole issue is whether the moving party is entitled to judgment as a matter of law. *ANR Advance Transp. Co. v. International Broth. of Teamsters, Local 710*, 153 F.3d 774, 777 (7th Cir. 1998).

<u>**ANALYSIS**</u>

The motion for summary judgment requires the Court to analyze the enforceability of the prepayment premium and the default interest provisions under factual circumstances that the parties agree are undisputed. Both the Note and Mortgage provide that the governing law shall be the law of the jurisdiction in which the mortgaged real estate is located. So Illinois law applies. The DEBTOR does not dispute that the Note, by its terms, provides for a prepayment premium and for default interest and that it does not characterize them as alternative remedies. Neither does the DEBTOR challenge that the preconditions for imposition of a prepayment premium and default interest, as stated in the Note, have occurred. Nor does the DEBTOR challenge the computation of the amount of the prepayment premium and default interest.[1]

The DEBTOR relies upon Bankruptcy Code section 502(b)(1), which provides for the disallowance of a claim to the extent it is unenforceable under the governing agreement or

---

[1]The Court is not suggesting that the decision not to question the amounts in the motion for summary judgment constitutes an admission. It does not.

applicable law, and upon section 506(b), which permits an oversecured creditor to be

allowed interest on its claim and any reasonable fees, costs, or charges provided for under

the agreement.   The clear majority rule, with which this Court agrees, is that the

allowability of *prepetition* interest, fees, costs and penalties as part of a secured creditor's

claim is not determined under section 506, but rather under section 502.   *In re Wesley,* 455

B.R. 383, 386 (Bankr.D.N.J. 2011) (citing cases).   Section 506(b) applies only to *postpetition*

interest, fees, costs and charges sought as part of an oversecured claim.   *Id.*

**Prepayment premium**.

By the terms of the Note, the DEBTOR'S obligation to pay the prepayment premium

arose when FANNIE MAE exercised its right of acceleration, which occurred prepetition.

A payoff letter issued by FANNIE MAE on April 12, 2012, includes the prepayment/yield

maintenance sum of $400,962.55, assessed on account of the "involuntary" prepayment.

In the context of this chapter 11 case, however, the DEBTOR is proposing to refinance the

loan with a new lender in order to pay FANNIE MAE in full, an event which, viewed in

isolation, would be a voluntary prepayment.   On one hand, if the Note is considered as

being involuntarily prepaid based on its prepetition acceleration, then section 502(b)(1) and

(2) should apply.   On the other hand, if the prepayment is viewed as a "voluntary"

postpetition prepayment, then section 506(b) should apply.[2]   The parties do not address,

and thus do not ask the Court to decide at this stage, whether the prepayment premium

liability derives from the prepetition event of acceleration or the postpetition event of

---

[2]The amount of the prepayment premium changes if the prepayment is considered to be a voluntary postpetition prepayment.  The prepayment premium formula value for "n" differs depending upon whether the prepayment is voluntary or involuntary.

refinancing.  Neither do they address or ask the Court to decide whether the enforceability

of the prepayment premium is properly analyzed under section 502(b) or section 506(b).

As it relates to the prepayment premium issue, the DEBTOR'S argument in the motion for

summary judgment is limited to the application of caselaw.  So the Court will confine its

analysis and decision to that limited question.

There is no *per se* prohibition against prepayment premiums under Illinois law.

Such provisions are routinely upheld and enforced where the mortgagor voluntarily elects

to pay the loan prior to maturity.  *First Nat. Bank of Springfield v. Equitable Life Assur. Soc.,*

157 Ill.App.3d 408, 414-15, 510 N.E.2d 518 (Ill.App. 4 Dist. 1987).  Illinois cases limiting the

enforcement of prepayment premiums are scarce.  One appellate court has held that a

lender could not collect a premium or penalty for prepayment where the lender makes a

voluntary choice to accelerate the debt in reliance upon an optional due on sale clause.

*Slevin Container Corp. v. Provident Federal Sav. & Loan Ass'n,* 98 Ill.App.3d 646, 424 N.E.2d

939 (Ill.App. 3 Dist. 1981).  It has been held that in the event of condemnation, performance

of a prepayment penalty clause will be excused unless there is clear language which

expressly delineates payment of a premium upon condemnation.  *Village of Rosemont v.*

*Maywood-Proviso State Bank,* 149 Ill.App.3d 1087, 501 N.E.2d 859 (Ill.App. 1 Dist. 1986).

The DEBTOR relies upon *Slevin Container,* contending that the appellate court

announced a firm rule of Illinois law that payment after acceleration can never be a

"prepayment," since the loan matured by election of the lender.  The note at issue in *Slevin*

*Container* provided a right of prepayment to the borrower and a corresponding option to

the lender to charge up to six months' worth of anticipated but unaccrued interest if annual

prepayments exceeded $93,600.  Separately, the note addressed the event of the borrower's
unauthorized transfer of the real estate securing the note, providing that the lender could
either increase the interest rate to 8% or declare the entire unpaid balance due or both.

After learning that Slevin Container had sold the real estate, the lender elected to
exercise its option to declare the entire balance due and, in addition, to assess the
prepayment penalty and add it to the balance due.  The appellate court stated the issue as
"whether the lender may both accelerate the maturity of the note upon a sale of the
premises and also collect a premium or penalty for prepayment."  98 Ill.App.3d at 648.
Characterizing the lender's decision as an election of remedies, the appellate court
reasoned that the lender could have elected not to accelerate so that "the mortgage
payments could have been continued as in the past."  *Id.*  In that event, the prepayment
premium could have been assessed as permitted by the terms of the note in the event of a
prepayment.  In fact, Slevin Container had earlier notified the lender of its intent to
continue making monthly payments at the increased interest rate of 8% if the lender chose
not to accelerate the note.  Since Slevin Container's notice preceded and, undoubtedly,
triggered the lender's election to accelerate, the election was made by the lender with full
awareness of its obligor's intentions.

The appellate court held that the lender could not charge the prepayment premium
after having voluntarily elected to accelerate the note as permitted by the due-on-sale
provision, stating as follows:

> We believe where the discretion to accelerate the maturity of
> obligation is that of the obligee, the exercise of the election renders the

8

> payment made pursuant to the election one made after maturity and by
> definition not prepayment.

It is this statement that the DEBTOR argues is the annunciation of a sweeping common law

principle that prohibits prepayment penalties after acceleration whenever a note is

governed by Illinois law.  This Court disagrees.

Despite the broad phrasing of the appellate court's statement, it must be recognized

first and most importantly that the court was construing the terms of a promissory note as

part of an agreement between two private parties.  Notes are construed according to the

general rules of contract interpretation.  *Lyons Sav. & Loan Ass'n v. Geode Co.,* 641 F.Supp.

1313, 1322 (N.D.Ill. 1986).  The primary objective in construing a contract is to give effect

to the intent of the parties.  *Gallagher v. Lenart,* 226 Ill.2d 208, 232, 874 N.E.2d 43, 58 (2007).

Thus instruments and contracts are treated as *sui generis* and must be interpreted on their

own terms.  *Apponi v. Sunshine Biscuits, Inc.,* 652 F.2d 643, 648 n.4 (6th Cir. 1981); *Diaz v.

Home Federal Sav. & Loan Ass'n of Elgin,* 337 Ill.App.3d 722, 728, 786 N.E.2d 1033 (Ill.App.

2 Dist. 2002).  The judicial construction given a contract document generally has no

precedential effect on courts dealing with different contracts between different parties.  *Id.*

at 728-29.  It is well settled that the precedential scope of a decision is limited to the facts

before the court.  *Blount v. Stroud,* 232 Ill.2d 302, 324, 904 N.E.2d 1 (2009); *People v.

Hernandez,* 2012 IL App (2d) 110266, 972 N.E.2d 760 (Ill.App. 2 Dist. 2012).  The doctrine of

*stare decisis* applies only to issues of law and is not applicable to determinations of fact.[3]

*Complaint of  Tug Helen B. Moran, Inc.,* 607 F.2d 1029, 1031 (2d Cir. 1979); *In re Brand Name*

---

[3]By way of contrast, considerations of *stare decisis* weigh heavily in the area of statutory construction.  *Illinois Brick Co.
v. Illinois,* 431 U.S. 720, 736, 97 S.Ct. 2061, 52 L.Ed.2d 707 (1977).

*Prescription Drugs Antitrust Litigation,* 2000 WL 204061 (N.D.Ill. 2000).

The *Slevin Container* court resolved an ambiguity in a promissory note as to the enforceability of alternative remedies in the context of a sale of the mortgaged property. This Court does not see how that decision could possibly have precedential effect in other cases presenting questions of interpretation of the provisions of different promissory notes under different circumstances. Even if the *Slevin Container* court thought it was speaking beyond the facts at bar for reasons of public policy, the circumstances necessary to accord a broader effect to the court's statement as to how the contractual term "prepayment" is to be defined, simply do not exist. The fundamental policy of freedom of contract is a strong and well-established public policy in Illinois. *Braye v. Archer-Daniels-Midland Co.,* 175 Ill.2d 201, 212, 676 N.E.2d 1295 (1997); *Rabin v. Karlin & Fleisher, LLC,* 409 Ill.App.3d 182, 188, 945 N.E.2d 681 (Ill.App. 1 Dist. 2011). A contract provision will not be invalidated unless it is clearly contrary to what the constitution, the statutes, or the decisions of the courts have declared to be the public policy of Illinois or unless it is manifestly injurious to the public welfare. *Phoenix Ins. Co. v. Rosen,* 242 Ill.2d 48, 55, 949 N.E.2d 639 (2011). The power to declare a private contract invalid on public policy grounds is exercised sparingly. *Id.* The public policy of the state of Illinois is to be discerned from the Illinois state constitution and statutes, as well as long-standing case law. *In re Estate of Feinberg,* 235 Ill.2d 256, 265, 919 N.E.2d 888 (2009). It is well-understood that the state legislature is the primary source of public policy, not the courts. *Phoenix Ins. Co. v. Rosen,* 242 Ill.2d at 55-56; *Household Bank, FSB v. Lewis,* 229 Ill.2d 173, 182, 890 N.E.2d 934 (2008); *Provena Covenant Medical Center v. Dept. of Revenue,* 384 Ill.App.3d 734, 768, 894 N.E.2d 452 (Ill.App. 4 Dist.

2008).

The *Slevin Container* court's statement that the obligee's exercise of the election to accelerate renders the subsequent payment one made after maturity and "by definition" not prepayment, is unsupported.  In the absence of any citation to the state constitution, a statute or long-standing case law, it cannot be presumed that the court was making a broad declaration of public policy.  Instead, the court's statement is better interpreted as a determination of the meaning of the concepts "maturity" and "prepayment" as they applied to the note at issue, under the particular circumstances before the court.[4]

The DEBTOR further relies upon *Matter of LHD Realty Corp.*, 726 F.2d 327 (7th Cir. 1984), suggesting that it also supports the broad proposition that a lender loses the right to a prepayment premium when it elects to accelerate the debt.  The DEBTOR contends that the Seventh Circuit held that payment after acceleration is not prepayment "as a matter of law," and that this Court is bound to follow *LHD Realty* as binding precedent.  The Court disagrees.

The appeal to the Seventh Circuit in *LHD Realty* arose out of a bankruptcy case filed in the Southern District of Indiana.  The bankruptcy court framed the issue as whether a prepayment premium and late charges were properly part of a mortgagee's allowed secured claim as determined under section 506(b), to which the court applied Indiana law. *In re LHD Realty Corp.*, 20 B.R. 722 (Bankr.S.D.Ind. 1982).  On appeal, the Seventh Circuit

---

[4]Although not raised by the DEBTOR, this Court is of the view that the recognized doctrine of election of remedies, which precludes resort to patently inconsistent remedies, would not have applied to the facts in *Slevin Container* and has no application to the FANNIE MAE prepayment penalty issue. *See Rotogravure Service, Inc. v. R.W. Borrowdale Co.*, 77 Ill.App.3d 518, 526-27, 395 N.E.2d 1143 (Ill.App. 1 Dist. 1979).  Hypothetically, the doctrine might preclude a lender from enforcing at the same time two remedies where one depends upon accelerating payments on a note and the other depends upon preserving the payment schedule without acceleration.

accepted that the governing law was Indiana law. *LHD Realty,* 726 F.2d 327 n.2 and n.8.

The court looked to caselaw from other jurisdictions for guidance, including *Slevin*

*Container,* only because there were no reported Indiana cases regarding prepayment

premiums. *Id.* at 330 n.2. Nothing in the court's opinion indicates that it was doing

anything other than deciding issues of Indiana law. As Illinois law governs the

interpretation of FANNIE MAE'S note here, the Seventh Circuit's opinion in *LHD Realty*

cannot have precedential effect.

Moreover, the *LHD Realty* note did not define "prepayment" with respect to default

or acceleration, so the Seventh Circuit was dealing with a circumstance not expressly

addressed in the note when it determined that the lender "voluntarily waived the unpaid

interest" by opting to exercise its right of acceleration. 726 F.2d at 331. The court also made

it clear that the "acceleration exception" to the ordinary right to collect a prepayment

premium could be modified by the parties through appropriate contractual provisions. *Id.*

at 331 n.5. Relying upon this footnote, Bankruptcy Judge Benjamin Goldgar has decided

that parties to loan agreements may agree that a prepayment premium may be due and

collectible even after acceleration. *In re AE Hotel Venture,* 321 B.R. 209, 218 (Bankr.N.D.Ill.

2005). This Court agrees with Judge Goldgar.

Seven years after *LHD Realty* was decided, in *Travelers Ins. Co. v. 100 LaSalle*

*Associates,* 1991 WL 23692 (N.D.Ill. 1991), the district court rejected the argument that

Illinois law prohibits the collection of additional interest whenever a lender chooses to

accelerate a note's maturity date. The note at issue provided that in the event of

acceleration as a result of any default by the borrower, the borrower was obligated to pay

additional interest calculated in accordance with a prepayment formula.  Finding *Slevin Container* and *LHD Realty* to be clearly distinguishable, and reasoning that the note provision was unambiguous that a default and acceleration would result in additional interest, the court held the prepayment premium obligation to be valid and enforceable as a matter of Illinois law.

Paragraph 10(a) of the FANNIE MAE Note, dealing with voluntary and involuntary prepayments, provides for the payment by the borrower of a prepayment premium calculated pursuant to Schedule A.  It is important to recognize that the Note, which is a standard form document created by FANNIE MAE, uses the term "prepayment" to refer not only to voluntary additional payments, but also to any and all amounts paid or collected after a default and acceleration, including proceeds from liquidation of collateral and collections made in enforcement of a judgment.  Unlike the notes at issue in *Slevin Container* and *LHD Realty,* the FANNIE MAE Note, by its unambiguous terms, specifies that the term "prepayment" includes payments made following default and acceleration, providing as follows:

> Upon Lender's exercise of any right of acceleration under this Note, Borrower shall pay to Lender, in addition to the entire unpaid principal balance of this Note outstanding at the time of the acceleration, (i) all accrued interest and all other sums due Lender under this Note and the other Loan Documents, and (ii) the prepayment premium calculated pursuant to Schedule A.

This provision is clear and unambiguous. Like the bankruptcy court in *AE Hotel* and the district court in *100 LaSalle Associates,* this Court is of the opinion that Illinois law permits a lender to lawfully charge a post-acceleration prepayment premium when the

promissory note so provides, as the FANNIE MAE Note does here.[5]   Neither *Slevin Container* nor *LHD Realty* are contrary authority.

## DEFAULT INTEREST

It appears from the Complaint and its motion that the DEBTOR challenges the default interest only to the extent that the court determines that the prepayment premium should be allowed, which the Court has now done.   Under Illinois law, default interest provisions are generally valid and enforceable so long as the higher rate is reasonable in light of the anticipated or actual loss caused by the breach and the difficulty of proving the loss.  *Inland Bank & Trust v. Knight,* 399 Ill.App.3d 378, 927 N.E.2d 777 (Ill.App. 1 Dist. 2010).

The DEBTOR asserts that allowance of default interest on top of the prepayment premium would amount to "an unreasonable and impermissible double recovery," relying upon *AE Hotel Venture* for the principle that default interest is not a reasonable charge if it compensates for an injury that has already been compensated in some other way under the note.[6]   321 B.R. at 216.   The DEBTOR argues that the prepayment premium and the default interest are imposed over the same post-default time period resulting in redundant or duplicative damages.

FANNIE MAE maintains that the default interest rate bump of 4% is reasonable and was freely agreed to by the DEBTOR.   In the Note, the Borrower expressly acknowledged:

(1)   that a payment default would "cause Lender to incur additional expenses in

---

[5]Of course, the Illinois Supreme Court has the final say on issues of state law and federal courts are mere prognosticators until then.   This Court's ruling constitutes its prediction as to how the Illinois Supreme Court, silent so far on the issue of prepayment premiums, would view FANNIE MAE'S Note.

[6]The *AE Hotel* court appears to have been making a general statement rather than a declaration of Illinois law.

servicing and processing the Loan,"

(2)     that "Lender will incur additional costs and expenses arising from its loss of
the use of the money due,"

(3)     that "it is extremely difficult and impractical to determine those additional
costs and expenses,"

(4)     that "during the time that any monthly installment or other payment due
under this Note is delinquent for more than 30 days, Lender's risk of
nonpayment of this Note will be materially increased and Lender is entitled
to be compensated for such increased risk," and

(5)     that Borrower agrees that the 4% increase represents a "fair and reasonable
estimate . . . of the additional costs and expenses Lender will incur by reason
of the Borrower's delinquent payment and the additional compensation
Lender is entitled to receive for the increased risks of nonpayment associated
with a delinquent loan."

FANNIE MAE relies upon *In re Vanderveer Estates Holdings, Inc.,* 283 B.R. 122

(Bankr.E.D.N.Y. 2002), which is in accord with the general proposition that interest, fees,

costs and other contractual charges arising prepetition are part of the secured creditor's

claim in the first instance determined by section 502(b) and not by section 506(b).

Unlike a one-time expense or charge such as a late charge, interest accrues each day

that principal remains unpaid. Whether prepetition or postpetition, interest is determined

on an accrual basis. Interest that accrues prior to the day of a bankruptcy filing is allowable

or not under section 502(b), while an oversecured creditor's entitlement to postpetition

interest is governed by section 506(b). The default interest charged by FANNIE MAE

commenced prepetition and is sought to be charged postpetition as well.[7]

The default interest is provided for by the terms of the Note. So under section

---

[7]At this stage, the Court is not being asked to determine the date that accrual of the default interest was permitted to
begin.

502(b)(1), the prepetition default interest must be allowed unless it was unenforceable under applicable Illinois law. In Illinois, there is no statutory ceiling on the rate of interest that may be charged on mortgage loans. *U.S. Bank Nat. Ass'n v. Clark,* 216 Ill.2d 334, 347, 837 N.E.2d 74 (2005). Neither is there a general prohibition against default interest. A borrower may agree to pay a higher rate of interest after default and the additional amount will be treated as liquidated damages, not as a penalty. *Baker v. Loves Park Sav. & Loan Ass'n,* 61 Ill.2d 119, 127-28, 333 N.E.2d 1 (1975). A liquidated damages clause is enforceable if the damages are reasonable in light of the anticipated loss and if the actual damages would be uncertain in amount and difficult to prove. *Karimi v. 401 North Wabash Venture, LLC,* 2011 IL App. (1st) 102670, 952 N.E.2d 1278, 1285. A term fixing unreasonably large liquidated damages may be unenforceable as a penalty on public policy grounds. *Id.* at 1288. The reasonableness of the amount, however, depends not on the damages actually suffered but on whether the amount reasonably forecasts and bears some relation to the potential loss as determined at the time of contracting. *Id.* The parties do not suggest that the reasonableness of FANNIE MAE'S default interest is a question of fact that should be determined on the basis of evidence. At least for purposes of the motion for summary judgment, both parties present the issue as one that may be decided on the record now before the Court.

In *Baker,* the Supreme Court of Illinois made the following findings in determining that a default interest bump of 1% was reasonable:

(1)    the additional amount was not for a fixed sum;

(2)    the default interest was computed only from the date of the breach and not before;

(3)      the default interest was charged only for the duration of the default; and

(4)      actual damages would be uncertain and difficult to ascertain or prove.

61 Ill.2d at 128.

The FANNIE MAE Note provides that an additional 4 percentage points above the non-default interest rate of 6.55% shall accrue on the unpaid principal balance from the earlier of the due date of the first unpaid monthly installment or other payment due, so long as any monthly installment or any other payment due under this Note remains past due for 30 days or more.  The Default Rate also applies whenever the unpaid principal balance of the Note becomes due and payable by acceleration or otherwise.

The *Baker* factors are met.  The default interest is not for a fixed sum.  Rather it decreases as the principal balance decreases.  The default interest is computed from the date of default or acceleration, and not before.  The default interest is charged only so long as an installment or other payment is past due and remains so for at least 30 days.  Actual damages would likely be difficult to ascertain and prove.[8]

Turning now to the default interest rate itself, while it might be suspected that at some level a default rate of interest could be so high as to be *per se* unreasonable, Illinois courts have established no such ceiling.  In *Bane v. Gridley*, 67 Ill. 388 (1873), the court upheld a provision in a note that required the debtor to pay interest at the rate of 30% per annum after maturity.  In *Walker v. Abt*, 83 Ill. 226 (1876), the court upheld a note provision increasing the interest rate from 10% to 20% upon maturity.

---

[8]The record contains no allegation of what FANNIE MAE'S damages might consist.  The DEBTOR does not address the issue.  As Illinois courts routinely seem to presume damages resulting from a payment default, so does this Court.

More recently, a 6% interest rate bump upon default was upheld in *Casaccio v. Habel*, 14 Ill.App.3d 822, 303 N.E.2d 548 (Ill.App. 1 Dist. 1973).  A 5% rate increase upon default was upheld in *Chemical Bank v. American Nat. Bank & Trust Co. of Chicago*, 180 Ill.App.3d 219, 535 N.E.2d 940 (Ill.App. 1 Dist. 1989).  Similarly, a 5% interest rate increase upon default was enforced in *Inland Bank & Trust v. Knight*, 399 Ill.App.3d 378, 927 N.E.2d 777 (Ill.App. 1 Dist. 2010).

So the 4% interest rate increase upon default provided for in FANNIE MAE'S Note is within the range of increases historically approved by Illinois courts.  But the DEBTOR does not claim that a 4% bump is inherently unreasonable.  The DEBTOR contends that the source of unreasonableness is the default rate's redundancy with the prepayment premium.

The Note contains a stipulation by the Borrower that prepayment will result in harm to the Lender "including reinvestment loss, additional expense and frustration or impairment of Lender's ability to meet its commitments to third parties."  The Note also contains an acknowledgment by Borrower that "the formula for calculating prepayment premiums set forth on Schedule A represents a reasonable estimate of the damages Lender will incur because of a prepayment."  Treating the future stream of interest income as an investment, the prepayment premium formula discounts to present value that portion of the future payments by which the Note interest rate exceeds the yield rate of a designated treasury security.

Similarly, the *Vanderveer Estates* court described the Yield Maintenance Premium formula, calculated by subtracting the yield on a treasury note of comparable maturity

18

from the note interest rate, applying the difference to the remaining principal balance at the time of prepayment, and discounting that amount to present value, as compensating the lender for the "actual yield loss incurred upon prepayment." 283 B.R. at 132. The court determined that the choice of a Treasury Bill benchmark was not inherently unreasonable. The court concluded that the yield maintenance premium represented a reasonable estimation of the lender's damages at the time the agreement was entered into. 283 B.R. at 133.

At least according to the terms of the Note, the prepayment premium and the default interest are described as addressing two different kinds of loss. The prepayment premium compensates FANNIE MAE for the loss of its income expectancy due to the early payoff.[9] By way of comparison, the Note attributes the Default Rate to lender's "additional expenses in servicing and processing the Loan," "loss of the use of the money," and that "Lender's risk of nonpayment of this Note will be materially increased." The default interest purportedly compensates FANNIE MAE for the increased risk of nonpayment and the extra expenses involved in servicing a delinquent loan. Although the period of default interest partially overlaps with the discount period of the prepayment premium, that does not mean that the amounts are double compensation for the same loss. By the terms of the Note, they cover separate losses. In *Vanderveer Estates,* the court recognized the distinction between the yield maintenance premium designed to recoup lost future interest, and default interest compensating for the administrative expenses and inconvenience in

---

[9]As indicated, the Court did not hear evidence and no affidavits, declarations or deposition transcripts were attached to the pleadings. The record contains no evidence of alternative investments available to FANNIE MAE or whether current interest rates on similar commercial loans are more or less than the rate charged to the DEBTOR. Neither does the record disclose whether the DEBTOR'S loan was sold to an investor as part of a collateralized security and, if so, the financial consequences to FANNIE MAE of the prepayment.

monitoring untimely payments, holding they are not duplicative.  283 B.R. at 134.

The DEBTOR submits no Illinois caselaw that holds or even suggests that a lender may not recover both a prepayment premium and default interest, even where the calculation period for the prepayment premium overlaps with the default interest period. The Court concludes that the DEBTOR has failed to establish that a default interest provision is unenforceable as a matter of Illinois law where a lender is also recovering a prepayment premium.

As to FANNIE MAE'S entitlement as an oversecured creditor to postpetition interest, section 506(b) is the applicable statutory provision.  In the Seventh Circuit, it is settled that there is a presumption that an oversecured creditor is entitled to postpetition interest at the contractual default rate, if applicable under the circumstances, provided that there are no equitable considerations that would compel a different result.  *Matter of Terry Ltd. Partnership,* 27 F.3d 241, 243 (7th Cir. 1994).  *Accord, Matter of Southland Corp.,* 160 F.3d 1054, 1059-60 (5th Cir. 1998); *General Elec. Capital Corp. v. Future Media Productions, Inc.,* 547 F.3d 956, 961 (9th Cir. 2008).

The Seventh Circuit suggested that a failure of proof of justification for a default interest rate that is significantly higher than the predefault rate, could be one possible ground for rebuttal of the presumption.  The court also cited an example where a bankruptcy court refused to award substantially higher default interest where the lender was already receiving late fees, reasoning that a higher default rate of interest would have enabled the creditor to recover twice for the same losses.  *Terry,* 27 F.3d at 243-44 (citing *In*

*re Consolidated Properties Ltd. Partnership,* 152 B.R. 452 (Bankr.D.Md. 1993)).   FANNIE

MAE'S Note provides for a late charge equal to 5% of each unpaid installment or other

amount due.  According to its proof of claim, however, FANNIE MAE is not assessing any

late charges against the DEBTOR.  So there is no duplication.

For the reasons stated above, based on the record before the Court, it cannot be

concluded that the prepayment premium and the default interest are duplicative.  The

record contains no apparent grounds to support a rebuttal of the presumption that

FANNIE MAE is entitled to postpetition interest at the default rate.

Summary judgment will be denied and this adversary proceeding will be scheduled

for a continued pretrial conference.  This Opinion constitutes this Court's findings of fact

and conclusions of law in accordance with Federal Rule of Bankruptcy Procedure 7052.  A

separate Order will be entered.

###